FILED
CLERK
8/11/2017 4:58 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
DEVOS LTD. d/b/a GUARANTEED RETURNS,

      Plaintiff,

 -against-

CHAD BRADHOLD, BRIAN MOORE, THOMAS J. LUKACZ,
PHARMALINK, INC. and JOHN DOES 1 to 15,

      Defendants.
--------------------------------------------------------------------------------x

**Decision & Order**
17-cv-3718(ADS)(AKT)

<u>APPEARANCES:</u>

**Meltzer, Lippe, Goldstein & Breitstone, LLP**
*Attorneys for the Plaintiff*
190 Willis Avenue
Mineola, NY 11501
  By: Thomas J. McGowan, Esq., Of Counsel

**Boynton, Waldron, Doleac, Woodman & Scott, P.A.**
*Attorneys for the Defendants Chad Bradhold, Brian Moore, and Thomas J. Lukacz*
82 Court Street
Portsmouth, NH 03801
  By: Philip Pettis, Esq., Of Counsel

**Ogletree, Deakins, Nash, Smoak & Stewart, PC**
*Attorneys for the Defendant PharmaLink, Inc.*
10 Madison Avenue, Suite 402
Morristown, NJ 07960
  By: Sharon P. Margello, Esq., Of Counsel

**SPATT, District Judge:**

On or about March 22, 2017, the Plaintiff Devos Ltd. d/b/a Guaranteed Returns (the "Plaintiff" or "GRX") and two of its executives were convicted by a jury in the Eastern District of Pennsylvania on charges of mail fraud, wire fraud, theft of government property, money laundering conspiracy, obstruction of justice, and false statements.

Within a month of the conviction, the individual Defendants Chad Bradhold, Brian Moore, and Thomas J. Lukacz, all of whom worked as sales representatives for GRX, resigned and began working for a competitor, namely, the corporate Defendant PharmaLink, Inc.

1

The Plaintiff now seeks to enforce certain restrictive covenants that the individual Defendants signed as a condition of their employment with GRX. In particular, the Plaintiff moves under Fed. R. Civ. P. 65 for a preliminary injunction, seeking, among other relief, an order barring the Defendants, during the pendency of this litigation, from unfairly competing with GRX and/or engaging in conduct which allegedly violates the restrictive covenants.

Based on a review of the parties' submissions, together with the transcript of oral arguments heard on July 31, 2017, the Court now finds that the Plaintiff's motion for a preliminary injunction should be granted.

Initially, the Court notes that this case is substantially similar to another case, involving the same Plaintiff, which is currently pending before the Court, namely, *Devos Ltd. also doing business as Guaranteed Returns v. Jacob Record, et al.*, 2:15-cv-06916(ADS)(AYS) (the "*Record* Case"). In that case, the Court previously held that restrictive covenants materially indistinguishable from those at issue here were enforceable against GRX's former sales representatives, and that, in order to safeguard its valuable customer relationships and confidential customer information, the company was entitled to a preliminary injunction barring the defendants from acting in violation of such agreements. *See generally Devos, Ltd. v. Record*, 2015 U.S. Dist. LEXIS 172929 (E.D.N.Y. Dec. 24, 2015) (Spatt, J.). In the Court's view, the reasoning from that case applies with equal force to the facts of this case.

The only apparent difference between the *Record* Case and this case – and indeed, the only new fact raised by the Defendants as favoring a different result – is the procedural posture of the Plaintiff's criminal proceeding. Namely, whereas the *Record* Case was decided at a time when the allegations of wrongdoing against the Plaintiff were unproven (a circumstance the Court found insufficient to justify excusing the defendants from their continuing obligations under the restrictive covenants), the Defendants here argue that the Plaintiff's subsequent conviction has so altered the parties' contractual relationship as to render the restrictive covenants unenforceable.

However, from a legal standpoint, the conclusion favored by the Defendants is without precedent. The Court is unaware of any authority supporting the proposition that a corporate conviction *per se* invalidates an otherwise enforceable restrictive covenant covering the corporation's employees. In fact, at the in-person conference held on July 31, 2017, counsel for all parties agreed that there is apparently no factually similar caselaw, other than this Court's decision in the *Record* Case, which weighs decidedly against the Defendants' position.

The *Record* Case also governs with respect to the other legal arguments preliminarily advanced by the Defendants. Of particular note, the Court is not persuaded by the Defendants' argument that, to the extent the restrictive covenants apply nationwide, they are unreasonable in scope, as a matter of law.

This argument was expressly considered, and rejected, in the *Record* Case, where this Court explained that, "although the Restrictive Covenant is virtually unbounded in geographical scope, covering the entire continental United States; and despite the relatively undeveloped state of the record; the Plaintiff's assertions at this juncture make it plausible that specific facts will be elicited during discovery to establish the reasonableness of this restriction." *Devos, Ltd.*, 2015 U.S. Dist. LEXIS 172929, at *37.

In particular, the Court found that the nationwide reach of the Plaintiff's business, taken together with the individual Defendants' far-flung locations (in the *Record* Case, the defendants were based in Arizona, California, and Hawaii; in this case, the individual Defendants are based in Maryland, New Hampshire, and Kentucky), "militate[d] in favor of upholding an expansive geographical limitation on employees' ability to compete with the company after their termination." *Id.* at *37-*38 (citing cases).

On the present record, the Defendants' reliance on the geographical scope of the restrictive covenants is even less convincing, as the evidence appears to show that, at least with respect to the

Defendant Bradhold, after separating from GRX, he made overt attempts to service the same clients in the same regional territory as he did while employed by the Plaintiff. Thus, there is no reason to believe that a more narrowly-drawn geographic restriction would have prevented the complained-of conduct.

Nor is the Court persuaded by the Defendants' reliance on the more onerous legal standard that typically applies to mandatory, as opposed to prohibitory, injunctions. To whatever extent the Defendants contend that the requested preliminary injunction would affirmatively disrupt their current employment situations, the Court finds that circumstance to be a problem of their own making.

In particular, the evidence in the record strongly suggests that the individual Defendants were well aware of the restrictive covenants and the consequences of acting in violation of their terms after separating from GRX. Nevertheless, for purported reasons discussed more fully below, the Defendants concede that they did just that, and deliberately embarked on a course of conduct that appears to flagrantly violate the limitations in their employment agreements. In the Court's view, they may not now benefit from that decision by imposing upon the Plaintiff a heightened burden of proof.

The Defendants' reliance on the facts proffered through their supporting affidavits fares no better. Their main argument opposing enforcement of the restrictive covenants is that, post-conviction, the Plaintiff cannot continue operating as a going concern. Thus, the Defendants assert that they were effectively discharged as a result of the conviction because substantial portions of GRX's customer base have refused to do business with an entity convicted of fraud.

As an initial matter, the Court notes that the Plaintiff is appealing its conviction. In any event, while discovery may ultimately reveal facts demonstrating that the conviction had a materially harmful effect on the Defendants' employment, so that they were effectively forced to

4

resign, at this juncture, there is no evidence to support that theory other than the Defendants' self-serving accounts.

In this regard, the Court notes that a variation of the same contention was raised in the *Record* Case, where the defendants argued that the Plaintiff's indictment would have a comparably deleterious effect on their livelihoods. However, the Court noted that, contrary to the Defendants' description of a mass customer exodus, the preliminary evidence showed that "the Defendants [were] exploiting the Plaintiff's inclusion on a federal exclusion list to disparage the Plaintiff . . . and convert the Plaintiff's customer base to the Defendants' benefit." *Id.* at *51.

Although the allegations of wrongdoing on the part of the Plaintiff are now established, the Court nevertheless finds that, as in the *Record* Case, the position taken by the Defendants in this case may be somewhat misleading. Namely, contrary to the Defendants' reports of a large-scale, post-conviction departure of GRX's customers, the record contains evidence indicating that the individual Defendants actively solicited clients to move their business elsewhere and then attempted to conceal that fact from GRX.

Further, contrary to the Defendants' contentions, the record contains materially uncontroverted evidence from the Plaintiff's President and CEO regarding the continued viability of GRX. In sworn statements, Paul Nick stated that the company is very much a going concern; that internal controls were implemented to prevent any future conduct similar to that which led to the conviction; that, in any event, the company increased commission rates and salaries for its sales representatives to offset any potential market backlash from the criminal case; and that at least 30 sales representatives apparently did not share the Defendants' view that it would be "financially impossible" to continue working for GRX.

In the Court's view, this evidence also weighs heavily against the Defendants' theory that the overall purpose of the restrictive covenants has been frustrated.

Based on the foregoing, the Court discerns no compelling basis to depart from the reasoning and result reached in the *Record* Case, which, as noted above, was decided on facts substantially similar to those presented here. Accordingly, pending a final disposition, or until further Order of the Court, it is:

**ORDERED** that the individual Defendants are enjoined from using, disclosing or disseminating any of the Plaintiff's confidential and/or proprietary information, as those terms are defined in the restrictive covenants; and it is further

**ORDERED** that the individual Defendants shall immediately return to the Plaintiff any confidential and/or proprietary information currently in their possession; and it is further

**ORDERED** that the individual Defendants are enjoined from working with or for the corporate Defendant PharmaLink, or any other competitor of the Plaintiff; and it is further

**ORDERED** that the individual Defendants are enjoined from engaging in, assisting, or having any active interest or involvement in any business or entity that is engaged in substantially the same business as the Plaintiff; and it is further

**ORDERED** that the individual Defendants are enjoined from soliciting, contacting, doing business with, calling upon or communicating with any customer, former customer or prospective customer of the Plaintiff; and it is further

**ORDERED** that the corporate Defendant PharmaLink is enjoined from employing or otherwise accepting services from the individual Defendants; and it is further

**ORDERED** that these restrictions are conditioned upon the Plaintiff's posting of a bond in the amount $250,000.00 to cover the possible costs and damages that may be incurred by the Defendants if there is a determination that this preliminary injunction was improvidently granted.

If the bond is not filed within ten days of the date of this Order, the Defendants are granted leave to return to the Court and make an application to vacate the injunction.

This case is respectfully referred to United States Magistrate Judge A. Kathleen Tomlinson for discovery.

It is **SO ORDERED:**

Dated:  Central Islip, New York  
       August 11, 2017

/s/ *Arthur D. Spatt*  
ARTHUR D. SPATT  
United States District Judge